UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERESA JOHNSON,<br><br>                    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner, Social Security<br>Administration,<br><br>                    Defendant. | Case No.  1:14-CV-3048-JPH<br><br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' Cross-Motions for Summary Judgment (ECF Nos. 23, 27).  Plaintiff timely filed a Reply. (ECF No. 34).  The parties have consented to proceed before a magistrate judge.  Plaintiff is represented by James Tree.  Defendant is Defendant is represented by Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Catherine Escobar.   Upon consideration of the moving and responding papers, and for the reasons set forth below, Plaintiff's motion is granted, Defendant's cross-motion is denied, and this matter is remanded for payment of benefits.

ORDER – 1

## JURISDICTION/PROCEDURAL HISTORY

This case has a long procedural history including one previous remand from the District Court.  On February 8, 2006, Plaintiff filed for Supplemental Security Income benefits alleging disability beginning February 8, 2006. (Tr. 14, 90-92). Benefits were denied initially and on reconsideration.   Plaintiff requested a hearing, which was held by video before Administrative Law Judge Richard Say on April 15, 2009.   On September 16, 2009, ALJ Say issued an unfavorable decision finding the Plaintiff not disabled at any time through the date of the decision. The Appeals Council denied review and Plaintiff appealed the matter to this Court. *See Johnson v. Astrue*, E.D.WA Cause No. 2:11-CV-3035-CI.  After the filing of Plaintiff's summary judgment motion, the Court remanded by Order filed March 26, 2012 pursuant to the Commissioner's unopposed Motion to Remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (Tr. 24).

On remand, the Appeals Council vacated ALJ Say's decision.  The Appeals Council's three-page single-spaced order remanding outlined problems with the initial decision   (Tr. 820) and ordered the ALJ to: (1) update the record; (2) articulate a credibility finding and evaluate other source opinions including Social Worker Dick Moen; (3) re-evaluate the medical source opinions, particularly the opinions of Dr. LeBray, Dr. Gentile, Dr. Toews, and Dr. Rodenberger; (4) offer the

claimant a new hearing; and (5) perform the sequential evaluation process anew. (Tr. 821-822).

On July 30, 2013, another hearing was held before a different ALJ, Virginia Robinson. (Tr. 748-791).   A different VE testified, and an additional 856 pages were made part of the record.  On December 18, 2013, ALJ Robinson issued a partially favorable decision finding Plaintiff became disabled on her fiftieth birthday (August 1, 2012), but that she was not disabled between February 8, 2006 and July 31, 2012.  (Tr. 720-737).  Plaintiff did not file written exceptions with the Appeals Council, thus pursuant to 20 C.F.R. §404.984 the ALJ's ruling became final decision of the Commissioner as defined by 42 U.S.C. § 405(g).  Plaintiff timely filed this action on April 17, 2014 seeking judicial review of the Commissioner's final decision.

Upon the parties' consent, the case was subsequently reassigned to the undersigned magistrate judge.  Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties have briefed the issues and the matter is now fully submitted.

## BACKGROUND

The facts appear in the medical records, the administrative hearing transcript, the administrative decisions, and the parties' extensive briefing. They are only briefly summarized here and throughout this Order as necessary to explain

ORDER – 3

the Court's decision.  Plaintiff, a 51-year old woman on the date of the ALJ's 2012 decision, has not been gainfully employed since 2001.  Plaintiff completed the ninth grade, obtained her GED and a cosmetology license, and has attended some college courses at Yakima Valley Community College.  Her past work experience was as a self-employed hair dresser.   Plaintiff has been married three times (at ages 19, 25, and 30) and has two sons.

Plaintiff experienced a traumatic childhood characterized by abandonment. Her mother was incarcerated and her father, who had raised her since she was 4, was killed in a car accident on Christmas Eve when she was 8.  She and her brother were placed in her mother's care, where she was introduced to illicit drug use at age 12.  Plaintiff was the victim of physical and emotional abuse and violence perpetrated by and among family members.

Plaintiff began seeking mental health treatment at age 25 (1987) for severe panic attacks.   She was prescribed a highly addictive benzodiazepine drug, Klonopin, and became addicted to it. Two years later, while working as a flagger, she ruptured a disc in her back trying to lift a heavy electronic road construction sign which had blown over in the wind.  (Tr. 765).   She treated her pain with Demerol and Vicodin, but did not receive treatment for her back until 1991 when she received an MRI during her hospital stay for the birth of her first son. Plaintiff subsequently underwent a left hemilaminectomy operation at L5-S1.

ORDER – 4

Notwithstanding the back surgery, she continued to experience severe chronic pain and began self-medicating with heroin in her 30's. She stopped working as a beautician at age 39 in 2001. She lost custody of her youngest son and continued to experience personal crises of various kinds including substance abuse (alcohol, heroin, cocaine, and amphetamines), sexual assault, domestic abuse, unemployment, homelessness, poverty, arrests, and incarceration. In 2003 or 2004, Plaintiff's mental health deteriorated after her mental health counselor drugged and abducted her, took her into the woods and attempted to rape her. (Tr. 174-175, 180).

Plaintiff is described by her treating physician as a patient having "multilevel underlying problems." (Tr. 685). Plaintiff initially alleged disability due to "back injury, surgery, ddd [degenerative disc disease], depression, mental, PTSD," falls, and disabling pain. (Tr. 103). She claimed her "body ac[h]es with pain" in her legs, back, eyes, arms, hands, knee and neck. (Tr. 112). She claims herein that she has been disabled since 2006 due to chronic pain, degenerative disc disease of the cervical and lumbar spine, fibromyalgia, pain disorder associated with both psychological and general medical conditions, anxiety, post-traumatic stress disorder, personality disorder, and depression. Plaintiff has been prescribed medications to help with anxiety, depression, hypothyroidism, sleep, and pain (including gabapentin and narcotics such as methadone, oxycontin, morphine,

ORDER – 5

fentanyl, vicodin).   Plaintiff was methadone dependent from 2005 until she detoxed in March 2010. Plaintiff also suffers from carpal tunnel syndrome, as well as memory, intellectual, and emotional difficulties, including lost self-esteem.   In 2005, Plaintiff was described as "very thin" (Tr. 1278) at 5'6" and 125 pounds (Tr. 192). In 2006 she was prescribed Effexor to treat depression and thereafter experienced rapid significant weight gain. She weighed 188 pounds in 2008 (Tr. 198) and in excess of 200 pounds in 2009 (Tr. 1280, 45).  Plaintiff testified she had never been that heavy in her life. (Tr. 45).  She testified at the 2009 administrative hearing that she is tired all the time, weak and in pain.  (Tr. 44).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

ORDER – 6

vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual

ORDER – 7

functional capacity (RFC) is considered. If Plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See  Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not

ORDER – 8

disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir.1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839

ORDER – 9

F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Robinson determined that Plaintiff was not disabled prior to August 12, 2012, her fiftieth birthday, but that she became disabled as of that date. At step one of the sequential evaluation process, ALJ Robinson found Plaintiff had not engaged in substantial gainful activity since February 8, 2006, the alleged onset date. (Tr. 723). At step two, the ALJ found that "claimant's presentation to examining and treating providers has been inconsistent and she has not always been a good historian, hence the record reflects a variety of diagnoses." (Tr. 725). The ALJ determined "based upon the longitudinal record" that Plaintiff has the following six severe impairments: 1) degenerative disc disease of the cervical and lumbar spine, 2) a personality disorder, 3) affective disorder, 4) anxiety-related disorder,5) low average intellectual functioning, and 6) polysubstance dependence. (Tr. 723).   Plaintiff's bilateral carpal tunnel, thyroid condition, fibromyalgia, abscesses, knee problems, and obesity were deemed to be "non-severe" under the Commissioner's regulations, or alternatively did not reduce her residual functional capacity. At step three, the ALJ concluded Plaintiff's impairments did not meet or

ORDER – 10

medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404,

Subpt. P, App. 1. (Tr. 728). The ALJ then assessed Plaintiff's "residual functional

capacity" as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(b) including lift up to 10 pounds occasionally, lift or carry up to 5 pounds frequently, stand or walk for approximately 2 hours per eight hour workday and sit at least 6 hours per eight hour workday with normal breaks.  She can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch and crawl; and frequently handle or finger.  She should avoid concentrated exposure to workplace hazards such as hazardous machinery and unprotected heights and she should not drive.  She can perform relatively unskilled jobs with simple work decisions or well learned tasks in a setting with only superficial interaction with the public or coworkers; "superficial interaction" means she is able to give and receive simple directions and ask and answer simple questions; she can perform tasks such as, for example, making change but not engage in any extensive mediation, negotiation, problem-solving that would be required in a complaint department for example, or management or similar type work.

(Tr. 729.) Therefore, at step four, the ALJ found Plaintiff was unable to perform

her past relevant work as a beautician. (Tr. 735).

Under the Commissioner's regulations, Plaintiff was classified as a "younger

person," at age 43 on her alleged onset date.  20 C.F.R. § 416.963(c). On her

fiftieth birthday, August 1, 2012, Plaintiff became a "[p]erson closely approaching

advanced age," under the Commissioner's Regulations. 20 C.F.R. § 416.963(d).

The ALJ discussed Plaintiff's passage from one age category to the next, although

the ALJ deemed Plaintiff an "individual of advanced age" which is defined as *age*

ORDER – 11

*55 or over.*[1] (Tr. 735); 20 C.F.R. § 404.1563(e).  Upon turning age 50, the ALJ determined that Plaintiff was disabled independent of her substance use disorder due to solely to her *physical* impairments.  (Tr. 729, 737).  The ALJ specifically found that on August 1, 2012, considering her age, education, work experience, and exertional limitations, there were no jobs Plaintiff could perform and that disability was directed under Medical-Vocational Rule 201.06.  Prior to August 1, 2012, however, the ALJ determined Plaintiff was capable of performing the sedentary unskilled jobs of telephone quotation clerk (DOT code 237.367.046) and circuit board assembler (DOT code 726.684-110).  Thus, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act from February 8, 2006 through the day prior to the Plaintiff's fiftieth birthday, July 31, 2012. (Tr. 736.)

## ISSUES

Plaintiff raises the following issues before this Court: (1) The ALJ erred at step two by not finding fibromyalgia, pain disorder associated with psychological factors and general medical condition, and obesity were severe impairments; (2)

---

[1] It is within the Secretary's discretion to determine whether application of a higher age category is warranted in a particular case.  Consequently, the court will not make any judgment as to whether Plaintiff should have been evaluated as a person "approaching advanced age."

ORDER – 12

the ALJ failed to properly consider and reject the opinions of 12 treating, examining, and non-examining source opinions; (3) the ALJ improperly relied upon Plaintiff's drug abuse when analyzing Plaintiff's mental impairments; (4) the ALJ's residual functional capacity determination was flawed; and (5) the ALJ failed to meet her step five burden, and as a result did not perform the required analysis under *Bustamante v. Massanari* to determine if Plaintiff would be disabled separating out the impact of her addictions. Plaintiff urges the Court to remand for an immediate award of benefits. (ECF No. 23 at 42).

## DISCUSSION

### A. Step 2 – Medically Determinable Impairments

Under the regulations, the procedure at step two is as follows:

At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.... If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). An impairment is "not severe" when the impairment would have no more than a minimal effect on a claimant's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir.2005).

A claimant can only be prejudiced at step 2 by a finding that she has no severe impairments at all; otherwise, she advances to the next steps. The later steps do not

ORDER – 13

make use of the step two finding. Instead, the ALJ must consider all of Plaintiff's limitations, again and in even greater depth. *See  Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir.2011) (at step three, ALJ must consider "the combined effect of [Plaintiff's] limitations, both severe and non-severe," to determine whether they meet or equal a listing); 20 CFR 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity" for use at steps four and five). In other words, the impairments identified at step two are not intended to be a comprehensive survey. Step two is simply "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).  Accordingly, the omission of an impairment at step two can only be harmful if it prejudices Plaintiff in steps three through five. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Plaintiff argues that the ALJ's conclusion at step two is not supported by substantial evidence specifically because the ALJ deemed Plaintiff's fibromyalgia non-severe and disregarded her pain disorder.  Plaintiff contends the error impacted the proceeding steps of the sequential evaluation. Where the ALJ fails to discuss the severity of all of a claimant's impairments at step two, there is a danger that the analysis at steps three through five might be inaccurate. *See  Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996).  Defendant contends that any error at

ORDER – 14

step two was harmless, because the ALJ determined Plaintiff had a severe combination of physical and mental impairments, and proceeded to steps three through five and considered the cumulative effects of Plaintiff's severe and non-severe medically-supported symptoms. *See Burch*, 400 F.3d at 682 (9th Cir.2005).

The Court concludes the ALJ's improper rejection of fibromyalgia and wholesale failure to consider Plaintiff's chronic and multiple-sourced history of treatment for pain does not satisfy the *de minimis* standards of step two and was legal error.  The Court concludes the ALJ's error was not harmless due to the improper rejection of the medical evidence (as set forth below) and as it is evident the ALJ did not account for the severity of Plaintiff's chronic pain, the extensive mental health treatment history, or the effects of these disorders in later steps of the inquiry.

**1. Fibromyalgia**

The ALJ discussed Plaintiff's fibromyalgia at step two acknowledging that she "carries a diagnosis of fibromyalgia/myositis," but concluded it was non-severe stating: "it is not clear whether she meets the ACR [American College of Rheumatology] criteria for that diagnosis."  (Tr. 726).

Fibromyalgia, a chronic condition recognized by the ACR is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."

ORDER – 15

Social Security Ruling 12-2P.  Fibromyalgia is a disease that is notable for its lack of objective diagnostic techniques. *See  Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996).   In 2012, the Social Security Administration provided guidance on fibromyalgia in Social Security Ruling 12-2P and specifically outlined *two sets of* criteria that a claimant can rely on to support a diagnosis of fibromyalgia. The ALJ is prohibited from "playing-doctor" or drawing medical conclusions herself without relying upon the considered judgments of medical professionals.

Here, the ALJ's independent evaluation of Plaintiff's condition based upon her own consultation with an outside medical text, the ACR, was error.  *Day v. Weinberger*, 522 F.2d 1154, 1556 (9th Cir. 1975).   Although the ACR standards are routinely considered in evaluating *whether a physician used medically acceptable diagnostic techniques*, the ALJ's opinion does not reflect this acceptable purpose.   Defendant contends the ALJ's observation was reasonable in view of the "required trigger points" (ECF No. 27 at 7) for diagnosis and consultative examining physician Marie Ho's November 2011 remark that "[i]t is not clear that she has 11 of the 18 standard tender points of fibromyalgia." (Tr. 1087).   In 2010, the ACR revised the 1990 criteria for diagnosing fibromyalgia and eliminated the tender points test in favor of a broader assessment of pain and

ORDER – 16

other symptoms.[2]  The Social Security Administration's guidance on fibromyalgia found in Social Security Ruling 12-2P, considers both the 2010 ACR criteria and the earlier tender points criteria as alternative paths in diagnosing fibromyalgia. See SSR 12–2p: Titles II and XVI: Evaluation of Fibromyalgia, Policy Interpretation Ruling.  Dr. Ho in fact diagnosed Plaintiff with fibromyalgia after

---

[2] To establish a diagnosis under the 2010 Criteria, the claimant must have a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. 2012 WL 3104869 at *3. Fibromyalgia symptoms and signs that may be considered include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or memory problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* at n. 9. Co-occurring conditions include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id.* at n. 10.

ORDER – 17

determining Plaintiff had just "10 or 11" of the standard tender points.  The ALJ's decision does not reflect an adherence to the protocol for analyzing evidence of fibromyalgia outlined in SSR 12-2p.

Widespread body pain is Plaintiff's single most consistent complaint across the entire record.  Plaintiff was first diagnosed with fibromyalgia in June 2008 by her treating doctor, Marjorie Henderson, M.D. (Tr. 685). Dr. Henderson's treatment notes describe "very significant numbness and tingling in both upper extremities," "multilevel underlying problems", and "some significant obesity, which I think is making her exam also consistent with profound tenderness that is diagnostic of fibromyalgia."   (Tr. 685). While continuing to manage Plaintiff's pain with methadone, Dr. Henderson prescribed Lyrica, a drug that treats nerve and muscle pain. Plaintiff took Lyrica for over a year until side effects, including rapid weight gain, caused her to seek an alternative. (Tr. 685, 678, 679).  Between June 2008 and July 31, 2012, *eight* providers diagnosed fibromyalgia.  *See e.g.,* Tr. 678 (Marjorie Henderson, M.D.); Tr. 1091 (Marie Ho, M.D.); Tr. 1273 (Susan Rogers, ARNP); Tr. 1265-1269, 1280 (Daniel Kwon, M.D.) Tr. 1146-1148; (Rhea Z. Crisostomo, M.D.); Tr. 1515, 1218 (Mark J. Bauer, M.D.)("long-standing muskuleoskeletal complaints" "muscle tenderness, stiffness, and pain in the middle and lower back"); Tr. 672 (Omar Al-Bustami, M.D.). Her treating providers attempted to manage her fibromyalgia using Lyrica, Naproxen, Prednisone,

ORDER – 18

Gabapentin, physical therapy, and a steroid and toradol injection.    Additional

treatment notes reflect complaints of other fibromyalgia symptoms including

numbness, dizziness, joint pain, anxiety, depression, fatigue, blurred vision,

bloating, memory problems, muscle weakness, and sleeping problems.    The

Defendant's characterization of this record as reflecting "mixed diagnoses from

Plaintiff's physicians" is mistaken.  (ECF No. 27 at 7). Substantial evidence does

not support the ALJ's step two finding that Plaintiff's fibromyalgia was non-severe

since at least June 2008.

### 2. Pain Disorder

Three psychological evaluations have resulted in Plaintiff's specific diagnosis

of a "pain disorder with both psychological factors and a general medical

condition": the evaluations of Lawrence J. Lyon, Ph.D. (in 2005)(Tr. 691-700); L.

Paul Schneider, Ph.D. (in 2009) (Tr. 1274-1278); and J. Toews, Ed.D (in 2009)(Tr.

703-710).  The Appeals Council remanded this case with instructions to the ALJ to

specifically "address or provide reasons to reject Dr. Toews' opinion[] that the

claimant had a pain disorder with psychological features and a general medical

condition."    (Tr. 821). Plaintiff contends the ALJ impermissibly ignored the

Appeals Council's directive and erred in her failure to list this pain disorder as a

severe impairment.

ORDER – 19

It is legal error for the ALJ to disregard the Commissioner's regulations. *See Orn v. Astrue*, 495 F.3d 625, 635–36 (9th Cir. 2007). As set forth in 20 CFR § 404.977, on remand the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." *See also Hernandez-Devereaux v. Astrue*, 614 F.Supp.2d 1125, 1134 (D.Or. 2009). However, even if the ALJ failed to properly follow the Appeals Council's instructions, she committed reversible error only to the extent that such error was not harmless, i.e., only to the extent that substantial evidence does not support the ALJ's ultimate conclusions. *Id.* (*citing Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ did not provide the specific analysis called for by the Appeals Council. Instead, the ALJ made two broad statements about Plaintiff's mental health evidence: first, "drug use to the point of impairment has been intermittent and perhaps most prominent during psychological evaluations" (Tr. 723); and second, "[t]he claimant's presentation to examining and treating providers has been inconsistent and she has not always been a good historian, hence the record reflects a variety of diagnoses." (Tr. 725). The ALJ determined that the "longitudinal record" established five severe mental health impairments: personality disorder, affective disorder, anxiety-related disorder, low average intellectual functioning and polysubstance dependence.

ORDER – 20

The existence of a "variety" of diagnoses does not give the ALJ license to cherry-pick certain diagnoses that support a finding of non-disability, while ignoring the more complex evidence that points otherwise. The absence of analysis of *all* potential sources of Plaintiff's pain and the absence of any interpretation of the severity of the pain disorder is both perplexing and unreasonable given the remainder of the record, including: 1) the long term prescribed treatment for chronic pain and for example, her treating physician's diagnosis of "chronic pain syndrome" (Tr. 690); 2) the magnification of symptoms simultaneously which implies that Plaintiff's pain might have a psychogenic overlay; 3) the daily welfare checks of Comprehensive Mental Health documenting complaints of pain; and 4) the general characterization of Plaintiff's problems as "complex" given her substance abuse and history of "ups and downs" (Tr. 695).  Pain having its origin in a psychological disorder can be excruciating and not uncommonly, such persons, like Plaintiff, will resort to substance abuse to relieve their pain.  Deciding whether a patient is exaggerating, malingering, or whether chronic pain complaints may be of psychological origin or associated with the narcotic abuse/dependency issues is the task of the examining medical provider, not the ALJ.

At a minimum, substantial evidence supports a finding that Plaintiff's pain has multiple sources – both physical and psychological.  As the ALJ found Plaintiff suffered from two other severe impairments, the ALJ's step two error was harmless

ORDER – 21

in and of itself. *See Burch,* 400 F.3d at 682.  The harm came, however, when the ALJ also failed to properly consider the combined impact of these impairments in assessing plaintiff's RFC and the critical issue of the date of the onset of Plaintiff's disability.  The Court cannot find the ALJ's error harmless in this case due to the ALJ's improper rejection of fibromyalgia and the wholesale failure to consider Plaintiff's chronic, and multiple-sourced history of treatment for pain.

**B.    Step Three**

Plaintiff's Motion includes the contention that the Plaintiff's mental impairments met or equaled the Listing of Impairments for affective disorders (12.04); anxiety-related disorders (12.06); somatoform disorders (12.07); and personality disorders (12.08) and "thus the ALJ's step three finding are not supported by substantial evidence and are based on legal error."  (ECF No. 23 at 14).   Plaintiff argues the improperly rejected opinion of Dr. Rodenberger supports her contention, but she does not analyze step three or even discuss the criteria set forth in paragraphs A and B or C.  As a consequence, Defendant perceived the step three finding was "not at issue" and Plaintiff did not argue otherwise in her Reply. It is not this Court's function to develop additional arguments on Plaintiff's behalf. See  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008);  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

ORDER – 22

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). Accordingly, the Court concludes Plaintiff has not met her burden of demonstrating the ALJ's step three finding was in error.

## C.    Step Four

Plaintiff challenges the ALJ's determination of her RFC by alleging numerous errors in the ALJ's evaluation of the medical evidence. Plaintiff contends the ALJ "misjudged" her and the severity of her pain, and that her combined physical and mental residual functional capacity (RFC) is more limited than determined by the ALJ. Specifically, Plaintiff claims the ALJ did not properly consider the opinions of Plaintiff's treating physicians Treece, Henderson, and Bauer; examining doctors Crisostomo, Ho and Toews; non-examining doctors Rodenberger, LeBray and Gentile; and treating therapist Didier and social worker Moen.

In determining residual functional capacity ("RFC"), the ALJ is required to consider the *combined* effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere.  42 U.S.C. §§ 423(d)(2)(B), (5)(B). In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who

examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.2007). A nonexamining medical expert's opinion may constitute substantial evidence when it is consistent with other independent evidence. *Morgan v. Apfel,* 169 F.3d 595, 599–600 (9th Cir.1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

## 1. Treating Physicians Treece, Henderson, and Bauer

In a case involving voluminous records with intermingled findings and treatment for complex "multilevel underlying problems," the assessment of Plaintiff's residual functional capacity is difficult (Tr. 685). It is precisely this type

of a case involving diseases which manifest themselves differently over time where there is tremendous value to the opinions of treating providers with longitudinal relationships with the patient. The records of Plaintiff's three treating physicians support a conclusion that Plaintiff was disabled during the relevant period. The ALJ reached the opposite conclusion. "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent upon the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physician's findings." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The ALJ's perfunctory and erroneous regard for the impressions of Plaintiff's treating physicians, as described below, is contrary to the careful consideration required.

### a. *Gary Treece, M.D.*

The record contains two years of treating physicians' records which predate Plaintiff's claimed date of onset of disability. These records are probative of Plaintiff's condition starting on her alleged date of onset in that they document Plaintiff's "complex psychosocial situation" (Tr. 194) including unstable living conditions and abusive relationships; "longstanding" (Tr. 195) struggle with "chemical dependency issues" (Tr. 218); and prescription drug treatment for her thyroid condition, chronic pain, and ongoing "psychiatric issues" (Tr. 218) including depression, anxiety, and recurrent panic attacks. (Tr. 191-220; 238-239;

ORDER – 25

308).   In November 2005, Plaintiff was voluntarily admitted to the hospital for severe depression. At that time, her treating physician, Dr. Gary Treece, believed Plaintiff to be "mentally impaired," "chemically affected" and requiring "inpatient care and a prolonged stay at a safe house."  (Tr. 193).  At the time of Plaintiff's alleged disability onset date (February 2006), Dr. Treece was prescribing Plaintiff methadone for pain, clonazepam for anxiety/sleep, Levoxyl for hypothyroid, and Effexor, an anti-depressant. (Tr. 191).  Dr. Treece's follow up examination in July 2006 after Plaintiff's release from jail for violating parole noted that Plaintiff had "[a]lmost overwhelming stress in her life." (Tr. 274).

The ALJ's opinion acknowledges Dr. Treece as Plaintiff's treating endocrinologist, but makes no mention of these early treatment records. Plaintiff contends they demonstrate Plaintiff is "disabled when clean," that the failure to "weigh or reject the o[p]inion of Dr. Treece" was error.  As Dr. Treece's treatment notes do not assign any specific work-related limitations, the Court finds the failure to assign weight to his records is harmless.  Nevertheless, the omitted discussion lends credence to the Court's skepticism of the ALJ's regard for the full range of medical evidence in the evaluation of Plaintiff's complaints of pain and degree of impairment.

### b. Marjorie Henderson, M.D.

ORDER – 26

Plaintiff alleges the ALJ improperly accorded little weight to the opinion of treating physician Dr. Marjorie Henderson and specifically erred by relying upon ALJ Say's 2009 evaluation of her opinion.

Dr. Henderson 's treatment notes from Plaintiff's second appointment on June 24, 2008 comment that Plaintiff has: "continuing social chaos," been the victim of abuse, chronic pain, numbness and tingling in both upper extremities and hands, "emotional issues" which "obviously need[] to be carefully monitored," "significant obesity," "profound tenderness that is diagnostic of fibromyalgia," "obvious[]...psychiatric mental health issues," "very significant posttraumatic stress," depression which was "obviously...not well controlled," "profound" sadness such that it is "hard to have any kind of coherent conversation with her," and "*multilevel underlying problems*." Dr. Henderson opined that Plaintiff was "definitely flailing in every direction she can get to get improvement," (Tr. 685) including drug seeking behavior. Although Dr. Henderson noted that she did not have mental health records to review and was not a psychiatrist, her impression was that Plaintiff met the "criteria Social Security disability" on the basis of "her mental health and posttraumatic stress issues. The patient also has musculoskeletal issues." (Tr. 686).  She also opined Plaintiff would not be able to "stand and use her upper extremities" for the job of beautician.  (Tr. 686).  In July 2008, Dr. Henderson continued to opine Plaintiff was disabled, and "obviously needs work to

ORDER – 27

continue on a multitude of issues" including "chronic back pain and a lot of difficulties," (Tr. 683).   Although Dr. Henderson noted some improvement in 2008, she continued to opine that Plaintiff was disabled after subsequent visits in August, September, November, and December.  (Tr. 679-680; Tr. 678 ("…patient meets Social Security disability…more on the basis of her mental health issues than her physical issues…I could not think of what she would be able to do…her upper extremity difficulties…will limit her ability to return to work as a beautician."); Tr. 675 ("Overall, the patient's physical exam *continues to show one of just grave disability. I think this patient it not appropriate to try to return to work*. She does appear to be abstinent of any drug use and the drug screening in the ER was negative."); Tr. 353 ("mental issues are profoundly disabling and chronic" and Plaintiff would miss "quite a few" days of work per month)).

On remand, the ALJ addressed this significant evidence in a single sentence incorporating ALJ Say's findings and claiming "[t]he remand order makes no mention of the analysis of those opinions…" (Tr. 732). Defendant's Motion defends this action claiming the prior analysis of Dr. Henderson's opinion "was not disturbed by the Appeals Council's order."  However, the ALJ's 2009 decision was deficient in its discussion of the medical opinions.  It was vacated on remand with the specific instruction to ALJ Robinson to: "*reevaluate* the medical source opinions," "*explain* the reasons for the weight he gives to the opinion evidence,"

ORDER – 28

and "issue a new decision." (Tr. 822).  The vacated decision carries no weight. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (recognizing that vacated decisions "are officially gone. They have no legal effect what[so]ever. They are void. None of the statements made in [vacated decisions] ha[ve] any remaining force").  The ALJ's incorporation of the prior evaluation of the evidence on the grounds that it was not disturbed by the remand order was both in error and an inappropriate approach to a record of this nature.

### c. Mark Bauer, M.D.

Dr. Bauer treated Plaintiff at the end of the relevant period in question, beginning in September 2011.  In April 2012, he opined that Plaintiff was "considerably limited [sic] her ability for gainful employment." (Tr. 1554).  In July 2013, after treating Plaintiff for nearly two years, Dr. Bauer prepared a form for Plaintiff's attorney and relevantly remarked that Plaintiff's fibromyalgia and depression aggravated her musculoskeletal symptoms; that she needed to lie down 2-3 times a day; and that Plaintiff's constant pain would cause her to be absent from work 4 or more days per month. (Tr. 1515).  He opined that these limitations "probably" existed at least since he began treating in September 2011.  *Id.*

Dr. Bauer's opinion contradicts the ALJ's determination that "fibromyalgia does not further reduce the claimant's residual functional capacity." (Tr. 726). The ALJ's sole explanation for rejecting Dr. Bauer's opinion on the limiting effects of

ORDER – 29

Plaintiff's combined impairments was: "I find no basis in the record for the frequency of absences he described." (Tr. 735). The Ninth Circuit has held such vague and conclusory explanations are insufficient to meet the "specific, legitimate reasons" standard. In *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), the Court confronted a similarly vague finding by the ALJ: "The opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings." 849 F.2d at 421. The *Embry* Court explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct.

*Id.* at 421–22; *see also Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009).

The ALJ did not give sufficiently specific reasons for rejecting the opinions of Dr. Bauer, Plaintiff's treating physician.

### 2. Examining Physicians' Assessed Postural and Manipulative Limitations

Plaintiff alleges the ALJ erred in his assessment of the opinions of examining physicians Marie Ho, M.D. and Rhea Crisostomo, M.D. Specifically, Plaintiff challenges the propriety of the ALJ's RFC finding that Plaintiff could perform at the level required for sedentary work which requires "frequent" reaching, handling, and fingering and "occasional" stooping.

### a. Rhea Crisostomo, M.D.

In July 2010, Rhea Crisostomo, M.D. examined Plaintiff for the first (and only) time and completed a DSHS physical evaluation form. She diagnosed moderately severe fibromyalgia and indicated on the form that Plaintiff was limited by pain with "restricted mobility, agility or flexibility" in the following areas: balancing, bending, climbing, crouching, handling, kneeling, pulling, pushing, reaching and stooping. (Tr. 1144). Dr. Crisostomo did not explain the degree of restriction as called for by the form. The ALJ's recitation of Dr. Crisostomo's assessment indicates a restriction in "reading" rather than "reaching," which may or may not be a typographical error since the ALJ did not include a reaching limitation in the RFC. The Court notes Dr. Henderson also opined that Plaintiff's "arm problems" would at least "prevent her from returning to work as a beautician," a job which requires frequent reaching. Although the record supports some degree of upper extremity restrictions, Plaintiff has not demonstrated how Dr. Crisostomo's assessment undermines a RFC restricted to "frequent" reaching and handling.

### b. Marie Ho, M.D.

In November 2011, Marie Ho, M.D. performed an independent medical examination and determined Plaintiff was restricted to sedentary work with many non-exertional limitations. (Tr. 1085-1092). Despite giving significant weight to

ORDER – 31

Dr. Ho's opinion, the ALJ failed to include the restriction that Plaintiff must "avoid stooping" in the RFC. Plaintiff argues the ALJ's failure to acknowledge this limitation is particularly important in light of Social Security Ruling 96–9p ("SSR 96–9p"), which states that "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." Defendant concedes this error in the RFC (ECF No. 27 at 38), but argues the error was harmless because at step five none of the two jobs the ALJ found Plaintiff could perform require stooping.  The DOT descriptions for telephone quotation clerk and circuit board assembler all state that stooping is not an activity or condition associated with these jobs. DOT 237.367-046, 726.684-110, *available at*, 1991 WL 672194, 1991 WL 679616.  In her Reply brief, Plaintiff does not address this point and erroneously suggests inability to stoop necessarily rules out all unskilled sedentary work.

Although harmless errors in the omission of the reaching and stooping limitations do not themselves warrant reversal, again the ALJ's consideration of the evidence casts further doubt as to whether the ALJ based her decision on a careful and an accurate assessment of the record.

3. **Mental Health Evidence**

Plaintiff first began receiving mental health treatment in the 1980's at age 25.  A review of the record shows numerous providers have consistently observed

ORDER – 32

plaintiff to exhibit serious symptoms of mental illness or serious impairments in functioning. On remand, the Appeals Council specifically criticized the prior ALJ's consideration of the Plaintiff's mental health evidence.

Although it is both inappropriate and nearly impossible to consider physical as opposed to mental impairments in isolation, the ALJ made no assessment of degree of Plaintiff's mental impairment for the period *after* Plaintiff's fiftieth birthday. Instead, the ALJ deemed Plaintiff disabled on that date purely upon her *physical* ailments. For the six-year period from February 2006 to August 2012, the ALJ determined that Plaintiff had *mild* restriction in activities of daily living, *moderate* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation, each of extended duration. (Tr. 728). The ALJ found Plaintiff mentally capable of performing "relatively unskilled jobs with simple work decisions," which have "only superficial interaction with the public and coworkers," and which could involve "for example, making change" but not "any extensive mediation, negotiation, problem-solving that would be required in a complaint department…or management…" (Tr. 729). In reaching this decision the ALJ did not provide adequate reasons to justify rejection of significant probative medical evidence and it is apparent from the ALJ's RFC that the ALJ did not consider the impact of *all* of Plaintiff's impairments in combination.

ORDER – 33

a. *Candi Didier, M.S M.H.P*

Plaintiff contends the ALJ erred by rejecting the opinions of the members of Plaintiff's treatment team at Central Washington Comprehensive Mental Health, where Plaintiff began receiving mental health treatment prior to the date of onset.

Candi Didier was Plaintiff's mental health therapist for two years. Ms. Didier prepared two psychological evaluations, one after what appears to be Plaintiff's first session in July 2006 and another in 2008. (Tr. 241-244, 322-35). In 2006, Ms. Didier assessed Plaintiff as chronically mentally ill with marked functional limitations in *all* areas of mental functioning, except two deemed of moderate severity. (Tr. 243). She also noted Plaintiff's fear of mental health treatment due to prior traumatic experience. (Tr. 244). In 2008, after having worked with Plaintiff in individual sessions, Ms. Didier assessed Plaintiff with *mild* limitations in her ability understand simple instructions and care for self; *moderate* limitations in her ability to learn new tasks, exercise judgment, interact appropriately in public, and to maintain appropriate behavior; and continued *marked* degree of limitation in her ability to exercise judgment and make decision, to perform routine tasks, to relate appropriately to co-workers and supervisors, and to respond appropriately to and tolerate the pressure and expectation of a normal work setting. (Tr. 324).

ORDER – 34

The ALJ may discount the opinion of a non-acceptable medical source such as a mental health therapist by providing reasons that are "germane" to that source, a lower standard than rejecting an acceptable medical source. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).   Here, instead of specifying any weigh or bases for her determination, the ALJ merely incorporated ALJ Say's analysis of Ms. Didier in his vacated ruling. (Tr. 732).   After having been vacated, *none* of the ALJ's findings remained intact and it was the ALJ's duty to *reevaluate* this evidence. It is not clear that she did.   ALJ Say accorded the opinion little weight on account that "they appear to be based on the claimant's subjective complaints." (Tr. 22). However, it is reasonable to infer Ms. Didier's 2008 opinion after numerous treatment visits was formed at least in part based on personal observations and interviews, and perhaps other factors.   Accordingly, ALJ Robinson erred in her assessment of Ms. Didier's opinion, which contradicts the ALJ's RFC findings.

b.  ***Dick Moen, MSW and Philip Rodenberger, M.D.***

In November 2008, Central Washington Comprehensive Mental Health (CWCMH) team members, psychiatrist Dr. Rodenberger and therapist Dick Moen, co-signed a Mental Residual Functional Capacity Assessment (MRFCA) form and assessed marked limitations in 16 out of 20 areas of functioning that effect work activities. (Tr. 664-666). The remaining four areas of functioning were at the moderate level. (Tr. 664-666). Dr. Rodenberger noted on the form that he had

ORDER – 35

reviewed the form with the Plaintiff's case manager, Stephanie Fountaine, B.A., whom the record shows had contact with Plaintiff multiple times every week since at least September 30, 2008.   The ALJ accorded "little weight" to the MRFCA reasoning "treatment records from the CWCMH are not consistent with the assessed limitations."   This was the extent of the ALJ's analysis despite specific instruction by the Appeals Council to particularly focus upon Dr. Rodenberger's opinion and explain the reasons for the weight accorded. (Tr. 822).

The Court will not sift through the voluminous record searching for and re-weighing the evidence in search of the "treatment records" in support of her decision.   Defendant's memorandum cannot cure this defect.   Plaintiff convincingly argues at length how the 2008 opinion *is* supported by the CWCHM records.   (ECF No. 23, 27-31). Plaintiff's analysis is not an "*alternative* interpretation of the evidence" as Defendant contends; it is the *only* interpretation of the evidence the Court has.   *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ( "[W]hen the ALJ fails to state with at least some measure of clarity the grounds for his decision, [the court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion." (internal quotations omitted)).

c.   ***Peter LeBray, Ph.D. and Mary A. Gentile, Ph.D.***

In 2006, state agency reviewing psychologists Dr. Lebray and Dr. Gentile both

ORDER – 36

opined that Plaintiff's personality disorder would preclude her from having any contact with the public. (Tr. 271, 276).   The same opinion was specifically assessed by Plaintiff's treatment team at CWCMH in 2006 and 2008; Dr. Toews in 2009 (Tr. 713); and therapist Michael Werner, MSW in 2010 (Tr. 1157). Plaintiff's low Global Assessment of Function  (GAF) scores and progress notes with treating providers support these providers' assessment of major functional impairment in interpersonal functioning. One example stands out: in March 2010, her therapist took her to Walmart for her personal grocery shopping; Plaintiff "haggled with the Walmart cashier for every price on nearly every item in her cart. She argued with the cashier, did not have coupons to prove her prices and in the end got a grocery cart full of things for 70.00 dollars." (Tr. 1382).

The ALJ deemed Plaintiff capable of superficial contact having concluded that the record "since their [2006] review contains documentation that the claimant has greater social functioning than they assessed." (Tr. 732).  Once again, because the ALJ did not describe or cite any "documentation," the reason given by the ALJ is too vague for meaningful review and does not even constitute a germane reason for discounting these opinions.

The Court also notes that the DOT description of the job of a telephone quotation clerk appears to require more than superficial contact in that it involves dealing directly with the public, as well as the ability to "speak before an audience

ORDER – 37

with poise, voice control, and confidence, using correct English and a well-modulated voice." DOT #237-367-046. Substantial evidence does not support the ALJ's determination Plaintiff could perform this job. Finally, although the current social security regulations continue to recognize the DOT as an acceptable source, the job category of "telephone quotation clerk" has been abandoned by the Department of Labor in its Occupational Information Network replacing the DOT. O*Net No. 43–4171.00.

### d. Jay M. Toews, ED.D.

Plaintiff contends the ALJ erroneously disregarded without comment, Dr. Toews' January 2012 opinion that Plaintiff was "not capable of working while dependent on narcotics." (Tr. 1099). Defendant contends the ALJ's decision "provides sufficient guidance for this Court to draw inferences as to why the ALJ rejected Dr. Toews's opinion" and that given the volume of evidence the ALJ's findings should be given deference. (ECF No. 27 at 28-29). Because the ALJ did not address the evidence, the Court cannot determine whether the ALJ accidentally ignored it or, for some reason, did not think it was relevant or sufficient.

The ALJ's evaluation of the medical evidence, particularly the mental health evidence, is plagued with errors, the RFC is incomplete, and as a result the ultimate conclusion of non-disability at step five is fatally flawed. Where an existing mental impairment overlaps in time with diminishing physical impairment and the

mental impairment is in part attributable to the emotional trauma of the physical impairment and pain, the combined effect of the impairments <u>must</u> be considered in determining onset date. The pain disorder (with both general medical and psychological origins) which was ignored by the ALJ can precipitate substance abuse whereby the person tries to self-medicate. The mere fact that substance abuse aggravates (rather than medicates) mental illness does not mean that the mental illness itself is not disabling. Moreover, where a psychological examiner cannot separate the effects of a claimant's mental illness from the effects of substance abuse, then the finding would be that substance abuse is not a contributing factor to the disability determination.

### E. Step Five Denial of the Right to Question the Vocational Expert

One additional issue identified by Plaintiff merits a brief discussion. Plaintiff asks the Court to conclude as a "matter of law" that it was improper for the ALJ to not allow the vocational expert to answer Plaintiff's attorney's question based upon Dr. Rodenberger and Mr. Moen's ratings on the MRFCA.   After Plaintiff's attorney propounded a hypothetical assuming a person with "very significant interference" in the areas listed on the form, before the expert could answer the question, the ALJ interrupted stating:

I'm going to intervene here that I don't think, well in fact I know that that's not an appropriate question for a vocational expert because it's not formed in functional terms and I think the issue isn't does the person have significant limitations in their ability to act, it's how is that functionally going to manifest

itself at work….so the psychological evaluations that describe what the person is going to have difficulty with needs to be converted into a functional limitation…So if you can transfer some of that into functional limitations, that would be great…"

(Tr. 783-784).   Despite Plaintiff's attorney's argument to the contrary, the ALJ refused to allow it. (Tr. 785)( "I'm not going to allow a question that just asks about significant difficulties but I'm more than open to any question that defines what would be the functional impact of that on the person's work or ability to work.").

It is ultimately for the ALJ to explain why moderate to severe limitations do not translate into a limitation in Plaintiff's residual functional capacity. If it appears that the ALJ's RFC assessment fails to adequately account for marked or severe limitations, claimant's counsel should be accorded the latitude to develop the record without being directed to translate the medical evidence on his own – an expertise he does not possess. When a medical expert is not present to assist, counsel's only choice is to rely upon the RFC assessments in the record, the ALJ, and the vocational expert, who is routinely asked (and can often resolve) these very questions.   An ALJ properly limits questioning to material issues.   Hearings, Appeals and Litigation Law Manual ("HALLEX") I-2-5-30, 1994 WL 637367 at *1 (Aug. 29, 2014). However, the ALJ simultaneously has a duty to develop the record "both for and against granting benefits," *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000), and to grant the claimant "broad latitude in questioning witnesses."

ORDER – 40

HALLEX I-2-6-60, 1993 WL 751900, at *1 (Sept. 2, 2005).  In this instance, there was no lack of foundation for counsel's hypothetical question.  The refusal to allow the alternate hypothetical strikes as a deliberate effort to censor the discussion of the evidence in support of an earlier onset of disability.

## REMEDY

Plaintiff requests that this Court order an immediate award of benefits, a remedy within the Court's discretion. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Defendant has argued that this case with its voluminous record presents a close question upon which reasonable minds could differ and in which deference to the agency's ruling is owed.  However, due to the fact the ALJ failed to adequately discharge her duties as explicitly directed by the Appeals Council and to explain her findings, the Court finds it unwarranted to extend such deference.

The errors in this case are numerous, starting with the failure to properly assess the severity of Plaintiff's fibromyalgia and recognize her chronic pain disorder to be a medically-determinable impairment.  It is evidence the ALJ failed to consider the Plaintiff's severe and non-severe impairments *in combination* as she worked through steps 3-5. Had the ALJ properly assessed Plaintiff's fibromyalgia and chronic pain disorder, then she would have been required to consider the intensity and persistence of the claimant's pain and other symptoms and determine the extent

ORDER – 41

to which her symptoms limit her capacity for work. The ALJ failed to properly evaluate the medical evidence, and these errors undermine both the ALJ's RFC determination and the determination of onset date. The ALJ's decision does not reveal a careful consideration of the complex record involving multiple chronic impairments, including mental impairments and addiction. The finding of disability on Plaintiff's fiftieth birthday based solely upon degenerative disc disease and not the day before is a mechanical and arbitrary use of the age category, unsupported by the record.

Plaintiff filed for benefits in February 2006. More than nine years have passed since she applied and the matter has already been remanded once to the Commissioner for further proceedings. The erroneously rejected medical evidence, including Dr. Rodenberger's assessment, evidences the debilitating effects of Plaintiff's chronic conditions on her ability to work, even absent her addiction. The Court finds no reason to exercise flexibility in the credit-as-true rule under *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), as a review of the record *as a whole* does not create serious doubt that Plaintiff was in fact disabled during the period under consideration. The Court has given careful consideration to the fact the ALJ did not perform a drug addiction analysis called for by *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir.2001) for the specific period in question. However, the ALJ did determine Plaintiff's addition was ***not*** a

ORDER – 42

material contributing factor for the period starting *August 1, 2012*.  In this instance, it is difficult to imagine that any professional would be able to prepare a retroactive assessment of Plaintiff's pain and mental impairments since 2006 or the effect of her substance abuse, nor does the Court believe the existing voluminous record is inadequately developed on the issue.

The Court has also given careful consideration as to whether the record is fully developed from those credited-as-true opinions as to *when* Plaintiff became disabled. Social Security regulations make clear that determination of a disability onset date is a complex and fact-specific inquiry. Titles II & XVI: Onset of Disability, 1983–1991 Soc. Sec. Rep. Serv. 49 (S.S.A.1983), 1983 WL 31249, at *2–3. And in cases like Plaintiff's, it is "particularly difficult, when, for example, the alleged onset date and the date last worked are far in the past…," *Id*. at *4., and "may affect the period for which the individual can be paid…" *Id.* at *1.  The date of onset alleged by the Plaintiff "should be used if it is consistent with all of the evidence available." *Id*. at *2.  Plaintiff had not worked for five years prior to her alleged date of onset and she was receiving treatment for both her psychological and general medical conditions well *prior* to her alleged date of onset.  The medical evidence containing descriptions and examinations of the Plaintiff both immediately before and just after her application date are consistent with her contention that was disabled by February 2006.

ORDER – 43

After thorough consideration of the voluminous record and arguments of the parties, the Court concludes that a remand for further proceedings would serve no useful purpose.  *See Salazar v. Barnhart*, 468 F.3d 615 (10th Cir. 2006)(awarding benefits where it was difficult to imagine retroactive analysis of claimant's mental impairments five years earlier or effect of her addictions); *Wilder v. Apfel*, 153 F.3d 799 (7th Cir. 1998) (remanding for benefits "given the obduracy evidenced by the action of the administrative agency on remand"); *Calderon v. Astrue*, 683 F. Supp. 2d 273, 278 (E.D. N.Y. 2010)(ordering reversal and the award of benefits where after 10 years, the ALJ "disregarded the Court's mandate," on remand in what the judge believed was "an improper attempt to justify, by whatever means necessary, a preordained conclusion.").

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

2. Defendant's Cross-Motion for Summary Judgment (ECF No. 27) is **DENIED**.

///

///

///

///

///

ORDER – 44

3. For the foregoing reasons, the Commissioner's final decision is **VACATED** and this case is **REMANDED** for the calculation and payment of benefits from the Plaintiff's February 2006 onset date.

4. The Clerk shall enter judgment and close the file.

**DATED June 19, 2015**.

<u>s/James P. Hutton</u>
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

ORDER – 45